```
              IN THE UNITED STATES DISTRICT COURT

          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MIGUEL ANGEL DIAZ-MEJIA,       :
          Petitioner           :
                               :
     v.                        :   CIVIL NO. 02-CV-4454
                               :
JOHN ASHCROFT, UNITED          :
STATES ATTORNEY GENERAL,       :
et al.,                        :
          Respondents          :
                               :
                               :
```

GOVERNMENT'S RESPONSE TO PETITION
FOR WRIT OF HABEAS CORPUS

I. INTRODUCTION

This is an alien habeas corpus case. The petitioner, Miguel Angel Diaz-Mejia ("Diaz"), is a native and citizen of the Dominican Republic through birth there in January 1964. He entered the United States in June 1983 and was admitted as a lawful permanent resident.

In November 1991 Diaz "trafficked" in cocaine, in New Bedford (Bristol County), Massachusetts. It appears from the record that Diaz was not indicted there until July 1994. Diaz appeared in court, entered a plea of not guilty, and was enlarged on $4,500.00 bail. Diaz absconded and the bail was forfeited in January 1995.

Evidently in early 1996 Diaz came back into the custody of the Bristol County authorities, and his case was scheduled for trial in the Summer of 1996.

On April 24, 1996, President Clinton signed the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214. Section 440(d) of AEDPA eliminated a waiver of deportation known as the "212(c)" waiver (then codified at 8 U.S.C. § 1182(c)) for aliens like Diaz who were deportable as aggravated felons. See Sandoval v. Reno, 166 F.3d 225 (3d Cir. 1999).[1]

On July 8, 1996 during the Commonwealth's preparation for trial, Diaz withdrew his not guilty plea and entered a plea of guilty. Evidently there was a

---

[1] AEDPA § 440(d) (as amended by IIRIRA § 306(d)) amended INA § 212(c) to read:

> This subsection shall not apply to an alien who is deportable by reason of having committed any criminal offense covered in [INA] § 241(a)(2)(A)(iii) [8 U.S.C. § 1251(a)(2)(A)(iii)][aggravated felonies], (B)[drug convictions], (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 241(a)(2)(A)(ii).

plea agreement, and Diaz was sentenced to not less than three nor more than five years.[2]

On September 4, 1996 agents of the Immigration & Naturalization Service (INS) located Diaz at the Massachusetts Correctional Institution at Concord. INS issued an INS issued an Order To Show Cause ("OSC"), then the charging document in deportation proceedings.  The OSC alleged that Diaz was deportable as an "aggravated felon" under 8 U.S.C. § 1251(a)(2)(A)(iii), and also deportable as an alien convicted of controlled substances under 8 U.S.C. § 1251(a)(2)(B)(i) (these sections of Title 8 were renumbered to § 1227 after April 1, 1997 but their text remains unchanged.). Both of these charges are predicated on Diaz's trafficking conviction.[3]

---

[2]  The criminal docket and the INS' Show Cause Order are submitted separately by *praecipe* as the Clerk cannot receive document copies in the new electronic filing system.

[3]  These two bases of removal, § 1227(a)(2)(B)(i)(drug conviction) and § 1227(a)(2)(A)(iii)(aggravated felony conviction), are based on the same conviction yet are discrete in that the alien is subject to removal on either one alone, or both. There are certain drug convictions which render the alien deportable, but not as an "aggravated felon." The "aggravated felony" concept was added to the Immigration & Nationality Act in 1988, and one goal of the concept is to preclude aggravated felon

On September 30, 1996 Congress enacted amendment to the INA known as "IIRIRA." Section 304(b) of IIRIRA repealed § 212(c) altogether.[4] Most of IIRIRA, including the repeal of Section 212(c), became effective on April 1, 1997. Perez v. Elwood, - F.3d -, 2002 WL 1398527, *5 (3d Cir. Jun. 28, 2002). In its place, Congress provided the Attorney General the limited ability to cancel removal for a narrow class of inadmissible or deportable aliens; 8 U.S.C. § 1229b. The Attorney General's discretion to cancel removal does not, however, extend to any alien who has been convicted of an aggravated felony. See 8 U.S.C. § 1229b(a)(3).

Diaz was accorded a hearing before Immigration Judge Patricia Sheppard at the Old Colony Correctional Center in the Spring of 1997. The matter was continued

---

aliens from statutory waivers of removal. Cf. 8 U.S.C. § 1229b (providing for "cancellation of removal" for certain criminal aliens but not those classified as "aggravated felons.")

[4]   "IIRIRA" is the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Div. C of the Departments of Commerce, Justice, and State, and the Judiciary Appropriations Act for 1997, Pub.L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996). IIRIRA Section 304(b) repealed the § 212(c) waiver in its entirety.

until August 1997 to allow Diaz to retain a lawyer. On August 5, 1997 Judge Sheppard ordered Diaz deported. Judge Sheppard *sua sponte* raised the issue of Diaz's eligibility for a Section 212(c) waiver, but determined that he was not eligible because of the AEDPA amendment the previous Spring precluding the waiver for aggravated felons.

Diaz's lawyer appealed the deportation order to the Board of Immigration Appeals (BIA). On May 4, 1998 the BIA dismissed the appeal.

In June 2001 the Supreme Court decided the case of INS v. St. Cyr, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). St. Cyr held that the AEDPA amendments to the Section 212(c) deportation waiver were impermissibly retroactive in cases where the alien was deportable based on a guilty plea entered prior to April 24, 1996; St. Cyr, 121 S.Ct. at 2292-3 (§ 212(c) relief remains available for aliens "whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect")(emphasis added).

Diaz's present counsel then filed a "motion to remand" (presumably a motion to reconsider/reopen) with the

BIA, arguing again that Diaz was eligible to apply for a Section 212(c) waiver because he pleaded guilty. The BIA rejected his motion on May 23, 2002.

Following his release from sentence, Diaz was taken into custody by the INS on the final order of deportation, and detained at the INS' facility at the Berks County Prison.

Diaz filed a habeas corpus petition in the Southern District of New York, although no part of Diaz's criminal case or detention occurred there. That district transferred the habeas petition here on June 21, 2002.

Diaz's contention is that the St. Cyr holding applies to him, because he pleaded guilty prior to enactment of the IIRIRA and repeal of the 212(c) waiver.[5] Petition,

---

[5] In his petition to the Southern District, Diaz also alleged that he is eligible to apply for a "212(h)" hardship waiver (codified at 8 U.S.C. § 1182(h)). This waiver in terms is not available to drug dealers, and is not available to permanent residents who have been convicted of aggravated felonies; Diaz is thus precluded twice. Counsel nonetheless cites Beharry v. Reno, 183 F.Supp.2d 584 (E.D.N.Y. 2002), apparently for the proposition that Congress' clear restrictions on the 212(h) waiver must yield to some higher international law. Diaz would not have prevailed on this claim before Judge Batts in the Southern District, see Tulloch v. INS, 175 F.Supp.2d 644, 650 (S.D.N.Y.

¶ 17.

  For the foregoing reasons, the petition should be denied.

II. <u>ARGUMENT</u>

  From its passage in 1952 until September 30, 1996, the Immigration & Nationality Act contained Section 212(c) (8 U.S.C. § 1182(c)) which was in effect a waiver of deportation for criminal aliens.[6] The waiver was available to lawful residents who had been in the country for seven years at the time they applied for the waiver, always in deportation or exclusion proceedings.[7]  While discretionary

---

   2001)(Batts, D.J.), and the government assumes that he will not argue it further in this Court. The government notes also that Diaz never raised the 212(h) hardship waiver argument either to the Immigration Judge or to the BIA.

[6]  Originally Section 212(c) provided:
  Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General ...
8 U.S.C. § 1182(c), repealed (1996).

[7]  Although on its face § 212(c) applied only to exclusion proceedings, it was later held to cover deportation proceedings as well. <u>INS v. St. Cyr</u>, 121 S.Ct. 2271, 2276 (2001) (<u>citing</u> <u>Matter of Silva</u>, 16 I. & N. Dec. 26, 30, 1976 WL 32326 (1976); <u>Drax v. Ashcroft</u>, No. 99

to the Attorney General, the waiver was usually granted if the alien was statutorily eligible.

Beginning in 1990, Congress, through various acts, began to limit the availability of INA § 212(c) waivers. That year, Congress amended § 212(c) to exclude aggravated felons who had served at least 5 years of their sentence(s) for aggravated felonies. See St. Cyr, 121 S.Ct. at 2277 (citing § 511, 104 Stat. 5052). This had virtually no effect, as it is the unusual state prisoner who actually serves five years.

In 1996 Congress enacted the AEDPA and then the IIRIRA, six months apart. As noted above, AEDPA § 440(d) eliminated the waiver for, *inter alia*, all aggravated felon aliens, and IIRIRA § 304(b) eliminated whatever was left of the waiver by repealing it altogether. Diaz's argument is that, by pleading guilty prior to the repeal of the waiver, he had a reliance interest on its continued availability. Thus, he contends, the repeal is impermissibly retroactive as applied to him.

The flaw in this argument is readily perceived.

---

Civ. 3613, 2001 WL 1464241, at *3 (E.D.N.Y. Nov. 14, 2001). The distinction is not relevant to this case.

When Diaz pleaded guilty to an aggravated felony on July 8, 1996, he knew that the waiver was no longer available. The § 440(d) preclusion was effective April 24, 1996, more than two months before he changed his plea. Moreover, in Massachusetts, the superior court judge who took the plea colloquy advised Diaz that his plea would have deportation consequences. See Mass.Gen.L.Ann. ch. 278, § 29D; Commonwealth v. Rzepphiewski, 431 Mass. 48, 50-51, 725 N.E.2d 210 (2000).

Because Diaz was statutorily ineligible for the 212)(c) waiver when he changed his plea, he had no reliance interest in its availability, and St.Cyr's retroactivity analysis has no application to him. In St. Cyr, the Supreme Court held that "...§ 212(c) relief remains available for aliens ... whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief **at the time of their plea under the law then in effect**." St. Cyr, 533 U.S. at 326, 121 S.Ct. at 2274 and at 2292 (emphasis added). The version of Section 212(c) in effect in July 1996 precluded the waiver for aggravated felons and aliens convicted of drug offenses. See also Cinquemani v. Ashcroft, No. 00 Civ.

1460, 2001 WL 939664, at *4 (E.D.N.Y. Aug. 16, 2001) ("[W]here the admission of guilt occurs after the enactment of [AEDPA and IIRIRA], regardless of the timing of the criminal conduct itself, there is no impermissible retroactive effect because the criminal defendant is presumed to be aware of the deportation consequences in existence at the time of giving his or her guilty plea, including the consequent bar to discretionary relief from deportation" citing St. Cyr, 229 F.3d 406, 418 (2d Cir. 2000). Diaz's petition fails to state a claim of illegal detention and should be denied.

III. CONCLUSION

    For the foregoing reasons the petition must dismissed.

                        Respectfully,

                        PATRICK L. MEEHAN
                        United States Attorney

_____  _____
                        JAMES G. SHEEHAN
                        Assistant United States Attorney
                        Chief, Civil Division

                        _____
                        STEPHEN J. BRITT
                        Assistant United States Attorney

*Certificate of Service*

I certify hereby that on the 23rd Day of July, 2002 I personally served or caused to be served a copy of the attached Government's Answer To Petition for Writ of Habeas Corpus, addressed to:

>Jorge Guttlein Esquire
>Aranda & Guttlein
>291 Broadway Suite 1500
>New York NY   10007
>
>Attorney *pro pet.*

by first class mail service upon counsel.

---

STEPHEN J. BRITT
Assistant United States Attorney
Suite 1250, 615 Chestnut Street
Philadelphia, PA 19106-4476
(215) 861-8443
(215) 861-8642      telecopier

-12-